IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PRUCO SECURITIES, LLC, : : : : **Plaintiffs** : : v. : : DENNIS BROWNE, et al., : : **Defendants** : | CIVIL ACTION NO. 1:06-CV-0059 (Judge Conner) |

**MEMORANDUM**

Presently before the court is plaintiffs' motion for a temporary restraining order and preliminary injunction. For the reasons that follow, the court will grant plaintiffs' motion.

**I.   Background**

Defendants Dennis Browne ("Browne"), Andrew Grace ("Grace"), and Anthony Conte ("Conte") are former employees of Prudential.[1] Each resigned from Prudential on November 18, 2005 and now work for the Conte-Browne Group, LLP. (See Doc. 4 ¶¶ 2, 25.)

Browne began working for Prudential in January 1996. In December 2002, Browne became a Statutory Agent and signed a Statutory Agent Agreement. (See Doc. 5, Ex. C.) Before becoming a Statutory Agent, Browne was a Sales Manager operating under a Field Manager Agreement. (See Doc. 5, Ex. B.)

---

[1] "Prudential" refers collectively to The Prudential Insurance Company of America and Pruco Securities, LLC—plaintiffs in the instant action.

Grace began working for Prudential in June 2000.  In September 2002, Grace became a Statutory Agent and signed a Statutory Agent Agreement.  (See Doc. 5, Ex. E.)  Before becoming a Statutory Agent, Grace was a Financial Services Associate operating under a Financial Services Associate Agreement.  (See Doc. 5, Ex. D.)

Conte began working for Prudential in August 2004.  In October 2004, Conte became a Financial Services Associate and signed a Financial Services Associate Agreement.  (See Doc. 5, Ex. F.)  Before becoming a Financial Services Associate, Conte was a trainee and, therefore, not permitted to sell insurance or securities products. (See Doc. 15, Supplemental Decl. ¶ 17.)

The Statutory Agent Agreement signed by Browne and Grace contains the following confidentiality and restrictive covenants:[2]

> Section 6 -   Confidential and Proprietary Information; Company Documents; Company Property
>
> . . . .
> (b)   All Confidential and Proprietary Information, whether provided to you by Prudential or by any customer, client, customer lead or prospect, or from any other source, or prepared by you while associated with the Company in any capacity, is entrusted to you as an agent and representative of Prudential.  You acknowledge that this Confidential and Proprietary Information is unique, extremely valuable to Prudential and is developed and acquired by great expenditures of time, effort and cost.  You agree that this Confidential and Proprietary Information shall be treated by you at all times as confidential and as the proprietary

---

[2] The Financial Services Associate Agreement signed by Conte contains similar provisions regarding confidentiality and non-competition. (See Doc. 5, Ex. F §§ 5, 6.)

2

> property of Prudential. You agree not to divulge or disclose this Confidential and Proprietary Information to any third-party either during your association with the Company or at any time thereafter, except in the performance of your duties for the Company.
>
> (c) Upon termination of this Agreement by either party, . . . you shall immediately return to Prudential all documents described above, including but not limited to, originals, copies and computerized records containing such Confidential and Proprietary Information. You further agree, upon written request from Prudential, to certify in writing that you have complied with this provision of this Agreement. . . .
>
> Section 7 -   Restrictive Covenant
>
> Upon termination of your association with the Company, from any capacity, you agree that for a period of two years following the date of such termination, you will not, directly or indirectly, as to any product or service of the type issued, marketed or sold by the Company:
> (i) solicit from or attempt to solicit from; or
> (ii) sell to or attempt to sell to
> any person, company or organization that was sold to or serviced by any agency to which you were assigned, whose name became known to you, or to whom you have sold, or for whom you were named Agent of Record, or servicing representative, on any product or service issued, marketed or sold by the Company, during the course of your association with the Company in any capacity. The activity prohibited includes, but is not limited to, attempting to induce any such person, company or organization to withdraw values from product/service in force with the Company for the purpose of entering into any non-Company transaction.
> You also agree, during your association with the Company, in any capacity, and for a period of two years after the termination of your association with the Company, that you will not induce or attempt to induce any person associated with, or under contract with, the Company to terminate, and that you will not otherwise facilitate the termination by any such person of, his/her relationship with the Company. . . .

The Statutory Agent Agreement also contained the following damages/remedies provisions:[3]

> Section 8 -   Violation of Sections 6 or 7
>
> > In the event of breach of either Section 6 or 7 of this Agreement, you acknowledge that damages alone will not be an adequate remedy and that the Company will, in addition to damages, be entitled to injunctive or other equitable relief against you to enforce the provisions of these Sections, including but not limited to the relief set forth in section 11 . . . .
>
> Section 11 - Temporary Restraining Order / Injunctive Relief
>
> > You consent to the issuance of a temporary restraining order or a preliminary injunction by any court or agency with jurisdiction over you to prohibit your breach of any provision of this Agreement, or to maintain the status quo pending the outcome of any arbitration and/or litigation proceeding.

(Doc. 5, Exs. C, E.)

On January 10, 2006, Prudential commenced this action against Browne, Grace, and Conte alleging:  (1) breach of contract, (2) misappropriation of trade secrets, (3) breach of fiduciary duty, (4) breach of duty of loyalty, (5) intentional interference with actual and prospective economic advantages, (6) negligent interference with actual and prospective economic advantages, (7) conversion, and (8) unfair competition.  (Doc. 1.)  Prudential bases these claims on defendants' alleged violations of the hereinabove described covenants in their employment contracts.

---

[3] The Financial Services Associate Agreement signed by Conte contains a similar provision regarding injunctive relief.  (See Doc. 5, Ex. F § 9.)

4

Along with the complaint, Prudential filed a motion for a temporary restraining order and preliminary injunction to enforce the restrictive covenants in defendants' employment contracts and enjoin defendants from, *inter alia*, "soliciting any business from, or initiating any contact with, any client whom defendants . . . served or whose name became known to them during the course of their association with Prudential." (Doc. 2.) On January 11, 2006, the court conducted a hearing, via telephone, at which both parties were represented. Following the parties' arguments, the court permitted the parties to submit letter briefs regarding the enforceability and scope of the restrictive covenants at issue. The motion is now ripe for disposition.

## II. Discussion

The requirements for preliminary injunctive relief are well settled. The moving party must establish that (1) there is a reasonable probability of success on the merits, (2) irreparable injury will result without injunctive relief, (3) granting the injunction will avoid a comparably greater injury than denying it, and (4) the injunction is in the public interest. See BP Chems., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000); Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994). While each factor need not be established beyond doubt, they must combine to show the immediate necessity of injunctive relief. See Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002); see also Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273, 275-79 (7th Cir. 1992) (Posner, J.); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.3 (3d ed. 1998).

A.      **Reasonable Probability of Success on the Merits**

To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. See Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir. 1980). Whether success is likely requires examination of the legal principles controlling the claim and potential defenses available to the opposing party. See BP Chems., 229 F.3d at 264. However, the mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action. Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001) (citing 11A WRIGHT ET AL., supra, § 2948.3).

Based on the evidence presented thus far, the court finds that Prudential has a reasonable likelihood of success on the merits. Prudential has presented evidence that suggests that defendants are soliciting their former Prudential clients. In an email, a Prudential client stated: "I contacted Mr. Browne and he told me he was in the process of leaving Prudential . . . . He said he was starting a brokerage group . . . and he could invest our money if we transfer it from Prudential."[4] (Doc. 5, Ex. H.) A declaration submitted by Prudential also claims that several clients have

---

[4] During the hearing, counsel for defendants argued that because this email was initiated by the client and Browne only indicated that he was in the process of leaving Prudential, the client was not solicited by Browne. This argument is unconvincing and ignores the unambiguous assertion by the client that Browne indicated that he could invest the client's money if the client transferred it from Prudential.

reported that defendants telephoned them, attempting to have them transfer their accounts from Prudential to defendants' new employer and to terminate their Prudential policies.  (See Doc. 4 ¶ 27.)  According to the declaration, several other clients have indicated received a mailing from defendants, attempting to induce them to transfer their accounts and terminate their Prudential policies.  (See Doc. 4 ¶ 28.)  Prudential has purportedly lost more than ten accounts/policies formerly serviced by defendants as a result of defendants' solicitation.  (See Doc. 4 ¶ 29.)

Although defendants contend that the restrictive covenants are unenforceable, this argument is without merit.  Under Pennsylvania law,[5] a restrictive covenant is enforceable if the following requirements are met: "(1) the covenant must relate to a contract for employment; (2) the covenant must be supported by adequate consideration; [and] (3) the application of the covenant must be reasonably limited in both time and territory."  Bilec v. Auburn & Assocs., Inc. Pension Trust, 588 A.2d 538, 541 (Pa. Super. Ct. 1991) (citing Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 210 (Pa. 1976)).  A restrictive covenant entered into after an employee's initial employment is enforceable if it is supported by new consideration.  See George W. Kistler, Inc. v. O'Brien, 347 A.2d 311, 316 (Pa. 1975);

---

[5] Jurisdiction over the instant action is based on diversity of citizenship.  See 28 U.S.C. § 1332.  Although the Statutory Agent Agreement signed by both Browne and Grace specifies that New Jersey law governs (see Doc. 5, Exs. C, E ¶ 18), both parties agreed at the hearing that Pennsylvania law should apply in this case.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co., 880 F.2d 685, 688-89 (3d Cir. 1989).  The court notes, however, that the results would be unchanged under New Jersey law.

Davis & Ward, Inc. v. Tripodi, 616 A.2d 1384, 1387 (Pa. Super. Ct. 1992). New consideration may include "a corresponding benefit to the employee or a beneficial change in his employment status." Id.

In the matter *sub judice*, the employment contracts at issue were entered into after each defendant's initial employment, but they were supported by new consideration. Defendants do not dispute that each defendant's employment status changed with the new employment agreements, but they argue that the new positions were similar to their old positions and, therefore, were not supported by new consideration.[6] The court is unpersuaded. Browne and Grace received new consideration when switching from Sales Manager and Financial Services Associate, respectively, to Statutory Agents because they became independent contractors (i.e., they were no longer salaried employees of Prudential). (See Doc. 15, Supplemental Decl. ¶ 7, 15.) As independent contractors, they were compensated on a commission basis and received significant tax benefits. (See Doc. 15, Supplemental Decl. ¶ 8, 11, 16.) Likewise, they were free to manage their work activities independently. (See Doc. 15, Supplemental Decl. ¶ 10.) Conte received new consideration when transitioning from trainee to Financial Services

---

[6] During the hearing, defendants argued that, to be enforceable, the restrictive covenants had to be part of the employment contract signed ancillary to the inception of employment. In their subsequent letter brief, defendants recognized that a post-employment, restrictive covenant, supported by additional consideration, was enforceable. (See Doc. 14 at 2.) Hence, defendants dispute whether there was additional consideration, not whether the restrictive covenants relate to an employment contract.

Associate because he was able to receive a quarterly bonus based on commissions, he obtained pension benefits, and he was able to service clients.  (See Doc. 15, Supplemental Decl. ¶ 19.)  These changes to the terms of their employment clearly resulted in a "corresponding benefit" to defendants or a "beneficial change in [defendants'] employment status."  Id.  Thus, the restrictive covenants in defendants' employment contracts were supported by new consideration.

Defendants also contend that Prudential's proposed scope of the restrictive covenant is too broad.  The court agrees.  Under Prudential's interpretation of the restrictive covenants, defendants are prohibited from servicing or selling to any products to former clients under any circumstances, even in the event that the clients *independently contact* defendants.[7]  However, an employee non-compete clause cannot be used to restrict the independent choice of a non-employee.  See

---

[7] Prudential points to several cases to support its proposed scope of the restrictive covenants.  (See Doc. 15 at 2.)  These cases, however, do not support such a broad scope.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano, 85 F. Supp. 2d 491, 500 (E.D. Pa. 2000) (enjoining defendant "from accepting any business or account transfers from any said customers *whom [d]efendant has solicited*" (emphasis added)); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rodger, 75 F. Supp. 2d 375, 384 (M.D. Pa. 1999) (same); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran, 67 F. Supp. 2d 764, 783 (E.D. Mich. 1999) (same); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Masri, No. 96-CV-3804, 1996 WL 283644, *5 (E.D. Pa. May 28, 1996) (same); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin, No. 91 C 2324, 1991 WL 83163, n.4 (N.D. Ill. May 9, 1991) ("At the hearing on the motion to extend the TRO, both counsel agreed that defendant was not restrained from accepting business with those Merrill Lynch customers he did not solicit.  Hence, [defendant] is free to accept business from any clients he did not solicit.").  Indeed, the propositions Prudential culls from these cases relates to the courts' analysis of the "public interest" requirement for preliminary injunctive relief or of the hardships faced by clients, not the scope of such relief.

Bilec, 588 A.2d at 542 ("[I]t must be determined whether the non-competition covenant imposes restrictions broader than necessary to protect the employer.") Accordingly, any relief ordered would not prohibit such *unsolicited* selling or servicing.

### B.  Irreparable Injury

Irreparable injury is harm of such an irreversible character that prospective judgment following trial would be inadequate to make the moving party whole. See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). The mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. Id.; 11A WRIGHT ET AL., supra, § 2948.1. Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable." Instant Air Freight, 882 F.2d at 801. In the context of violations or threatened violations of restrictive covenants in employment contracts, "it is well recognized that injunctive relief is necessary . . . . to avoid irreparable harm . . . and to maintain the status quo." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chamberlain, 145 F. Supp. 2d 621, 625-26 (M.D. Pa. 2001).

In the matter *sub judice*, it is undisputed that Prudential faces irreparable harm in the loss of solicited clients and the use of confidential and proprietary

information to solicit former clients.[8]  Further, such harm to its client base and client relationships cannot be remedied by damages alone.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano, 85 F. Supp. 2d 491, 497 (E.D. Pa. 2000); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rodger, 75 F. Supp. 2d 375, 381 (M.D. Pa. 1999); John G. Bryant Co. v. Sling Testing & Repair, Inc., 369 A.2d 1164, 1167 (Pa. 1977).  Accordingly, Prudential has met this element for injunctive relief.

    **C.**    **Balancing of Hardships**

Whether granting injunctive relief would result in greater harm than denying it requires an examination of the terms of the proposed injunction, the respective positions of the parties, and some well-educated speculation on the possible effects of the injunction.  See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596-97 (3d Cir. 2002); Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co., 479 F.2d 607, 609-10 (3d Cir. 1973).  If the potential harms to others exceed the potential benefits to the moving party, injunctive relief should generally be denied.  See Novartis Consumer Health, 290 F.3d at 596-97.  Essentially, the question is whether the injunction would do more harm than good.

---

[8] In their employment contracts, defendants acknowledged that "damages alone will not be an adequate remedy" and that Prudential could seek injunctive relief for violations.  (See Doc. 5, Exs. C, E §§ 8, 11; Doc. 5, Ex. F § 9.)

In the matter *sub judice*, the court finds that the potential irreparable harm to Prudential[9] clearly outweighs any injury to defendants. The terms of the restrictive covenants do not prohibit defendants from servicing or selling to *all* clients, but merely former clients whom they have solicited. Indeed, any harm to defendants is self-inflicted, see Napolitano, 85 F. Supp. 2d at 498; Rodger, 75 F. Supp. 2d at 382, and the injunctive relief could be tailored to only maintain the status quo and to enforce the employment contracts at issue.[10] Likewise, the injunctive relief granted is only temporary and will terminate upon the arbitrators decision on permanent injunctive relief under the Code of Arbitration Procedure of the National Association of Securities Dealers.[11] See id. Accordingly, the court finds that the balancing of hardships weighs in favor of granting injunctive relief.

### D. Public Interest

Among the more nebulous concepts of equitable relief is the public interest factor of injunction analysis. 11A WRIGHT ET AL., supra, § 2948.4. This factor requires the court to look beyond the parties to gauge the injunction's potential effects on the community as a whole. See Novartis Consumer Health, 290 F.3d at

---

[9] See supra Part II.B.

[10] See supra Part II.A.

[11] During the hearing, defendants argued that they faced harm in having to prepare for arbitration on the issue of a permanent injunction within fifteen days of the issuance of any preliminary injunctive relief. Prudential, however, consented on the record to a minimum of a two month postponement of the arbitration proceedings.

596-97. Public policies favoring enforcement of statutory and contractual obligations constitute relevant considerations in this analysis.  See id.; United States v. Ingersoll-Rand Co., 320 F.2d 509, 524 (3d Cir. 1963).  However, specific, tangible effects on third parties should be the focus of the court's determination.  See Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997); Ingersoll-Rand Co., 320 F.2d at 524.

In the matter *sub judice*, the court finds that the public interest is served by the issuance of injunctive relief.  Not only would injunctive relief promote the enforcement of contracts, see Napolitano, 85 F. Supp. 2d at 498, but it would also protect clients' confidential information and discourage other employers from inducing the violation of restrictive covenants, see Chamberlain, 145 F. Supp. 2d at 626.

### III. Conclusion

The court finds that injunctive relief is warranted.  Prudential is reasonably likely to succeed on the merits of its case and faces irreparable injury without such relief.  Likewise, the balancing of the hardships weighs in Prudential's favor and injunctive relief is in the public interest.  Accordingly, the court will enter a temporary restraining order, conditioned upon Prudential's posting of $50,000.00

bond with the court, enjoining defendants from, *inter alia*, soliciting former clients.[12]

An appropriate order will issue.

            /s/ Christopher C. Conner
           CHRISTOPHER C. CONNER
           United States District Judge

Dated:       January 12, 2006

---

[12] Federal Rule of Civil Procedure 65 mandates as a prerequisite to entry of a temporary restraining order the "giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). In maintaining the status quo, defendants will not face significant losses as a result of the proposed injunction.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PRUCO SECURITIES, LLC,** | : : : : | CIVIL ACTION NO. 1:06-CV-0059 |
| Plaintiffs | : : | (Judge Conner) |
| v. | : : | |
| **DENNIS BROWNE, et al.,** | : : | |
| Defendants | : | |

### ORDER

AND NOW, this 12th day of January, 2006, upon consideration of plaintiffs' motion for a temporary restraining order and preliminary injunction (Doc. 2), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for temporary injunctive relief (Doc. 2) is GRANTED conditioned upon the posting of a bond or appropriate security in the amount of $50,000.00 with the Clerk of Court.

2. Upon the posting of said bond or security, defendants, their agents, servants, employer, employees, any entity with which they are affiliated, and those persons in active concert or participation with defendants who receive actual notice of this order by personal service or otherwise are ENJOINED from:

    a. Soliciting any business from, or initiating any contact with, any client whom defendants or the agency to which they were assigned served or whose name became known to them during the course of their association with Prudential.

    b.    Causing, assisting, or inducing[13] any client or contractholder of Prudential and/or any affiliate of Prudential, or any person whose name became known to defendants during the course of their association with Prudential, to:

        i.    Discontinue, terminate, transfer, or withdraw values from any policy, annuity, contract, service, or product of any kind of Prudential and/or any affiliate of Prudential; or

        ii.    Purchase services or products that compete, directly or indirectly, with those sold or serviced by Prudential and/or any affiliate of Prudential.

    c.    Using, disclosing, or transmitting for any purpose any confidential or proprietary information belonging to Prudential and/or any affiliate of Prudential or which Prudential and/or any affiliate of Prudential is obligated to protect, or concerning the customers, employees, and associated persons of Prudential and/or any affiliate of Prudential, including, but not limited to, the names, addresses, and telephone numbers of customers, employees, and associated persons of Prudential and/or any affiliate of Prudential, and the financial information of customers of Prudential and/or any affiliate of Prudential.

    d.    Destroying any of the records or information defendants removed from Prudential.

    e.    Soliciting for hire any person affiliated with Prudential (or formerly affiliated with Prudential immediately prior to such hire), or inducing any person affiliated with Prudential to leave Prudential and join defendants, Conte-Browne, any affiliate thereof, any entity defendants are affiliated with, or any other company or entity.

---

[13] The scope of this restriction does *not* include selling products to or servicing clients who independently contact defendants. See Memorandum supra Part II.A.

3. Defendants are further ordered to deliver any and all original Prudential records and software, copies or other reproductions thereof, and any other documents containing information derived from those records, in whatever form, including electronic or computerized versions, to the Prudential office at 150 Corporate Center Drive, Suite 105, Camp Hill, Pennsylvania, and purge such materials and documents and information derived therefrom from the possession, custody, or control of defendants or anyone working with or for defendants and the entity with which they are now affiliated, by 5:00 p.m. on Friday, January 13, 2006.

4. This temporary restraining order is binding upon defendants, their agents, servants, employer, employees, any entity with which they are affiliated, and those persons in active concert or participation with defendants who receive actual notice of this order by personal service or otherwise.

5. The parties are directed to proceed with arbitration in accordance with Rule 10335 of the Code of Arbitration Procedure of the National Association of Securities Dealers.

6. This order shall remain in full force and effect until completion of the arbitration proceedings in accordance with the Code of Arbitration Procedure of the National Association of Securities Dealers.

7. Counsel for plaintiffs shall effect service of this order upon all affected persons/entities as soon as practicable.

   /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge